## IN THE UNTIED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | | |
|---|---|---|
| TEAM KENNEDY, | : | |
|     **Plaintiff,** | : | |
| | : | |
| | : | **COMPLAINT #**_____ |
| **vs.** | : | |
| | : | |
| **FRANCISCO V. AGUILAR, in his official** | : | |
| **capacity as the Nevada Secretary of State,** | : | |
| | : | |
|     **Defendant.** | : | |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

### I. INTRODUCTION

1.     Plaintiff Team Kennedy (hereinafter "Plaintiff" or "Team Kennedy), by and through undersigned legal counsel, bring this action against Francisco V. Aguilar, in his official capacity as the Nevada Secretary of State and chief election official in charge with primary enforcement of the statutory provisions challenged in this action.

2.     Based on the doctrine of equitable estoppel, Plaintiff requests emergency preliminary and permanent injunctive relief against Defendant from enforcing his new interpretation of ambiguous and conflicting statutory provisions governing the circulation requirements of ballot access petitions for independent presidential candidates against Plaintiff and now requiring Plaintiff, after having collected the required number of petition signatures, to have named a vice-

1

presidential candidate on nomination petitions to secure ballot access after the required statutory approval was provided by Defendant on January 9, 2024 – a nomination petition which did not name Robert F. Kennedy Jr's, running-mate, who was not selected until March 26, 2024.

3.    Plaintiff also requests preliminary and permanent injunctive and declaratory relief against Defendant requiring independent presidential candidates to name their vice-presidential candidate months before the major political party presidential candidates are required to name their vice-presidential running-mates in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

4.    Plaintiff also requests preliminary and permanent injunctive relief against the $250.00 filing fee imposed on independent presidential candidates as a violation of rights guaranteed to Plaintiff under the First and Fourteenth Amendments to the United States Constitution.

## II.  JURISDICTION

5.    Jurisdiction lies in this Court under 28 U.S.C. § 1331, providing that district courts shall have original jurisdiction over all actions arising under the Constitution of the United States.  Moreover, jurisdiction lies under 42 U.S.C. §§ 1983, 1988 and 28 U.S.C. § 1343(a), the jurisdictional counterpart of 42 U.S.C. § 1983, as Plaintiff alleges violation of rights guaranteed under the First and

Fourteenth Amendments to the United States Constitution.

### III.   VENUE

6.      Venue is proper in the United States District Court for the District of
Nevada under 28 U.S.C. § 1391 as Defendant exercises his authority exclusively
within this district and maintains his office within this district and all the operative
acts and/or omissions have or will occur within this district.

### IV.    PARTIES

7.      Team Kennedy is the principal campaign committee to elect Robert F.
Kennedy Jr., to the office of President of the United States at the 2024 general
election.  Team Kennedy is a registered campaign committee with the Federal
Elections Commission.  Team Kennedy filed FEC Form 1, Statement of
Organization on April 5, 2023.  Team Kennedy's FEC Committee I.D. Number is
C00836916.  To qualify Robert F. Kennedy Jr., for Nevada's 2024 general election
ballot for the office of President of the United States, Team Kennedy is required to
file with Defendant a master copy of the "Independent Petition of Candidacy"
(hereinafter the "Petition") before Team Kennedy is permitted to lawfully circulate
the Petition to collect the required number of signatures from registered Nevada
voters.  Plaintiff is required to file, no later than July 5, 2024, with Nevada County
Clerks a Petition containing at least 10,095 signatures for validation.  After the
County Clerks validate Plaintiff has collected a sufficient number of valid

3

signatures, Plaintiff must file with Defendant, no later than August 9, 2024: (1) the Petition; (2) a Declaration of Candidacy for the presidential and vice-presidential candidates; (3) a $250.00 filing fee; and, (4) a list of Mr. Kennedy's six (6) presidential elector and alternate presidential elector candidates, along with their required pledge to cast their ballots in the electoral college for the presidential and vice-presidential candidates who nominated them as presidential elector candidates. The address for Team Kennedy is: 124 Washington Street, STE 101, Foxborough, MA 02035.

8.     Defendant Francisco V. Aguilar is the Nevada Secretary of State and the chief elections officer of Nevada and has ultimate authority over the enforcement of the Nevada Election Code, including the provisions challenged herein. Defendant is the state official charged with accepting the filing of Plaintiff's Petition, Declaration of Candidacy for the offices of President and Vice President, Plaintiff's list of presidential electors and filing fee. Defendant is the official who changed Nevada's interpretation of conflicting statutes governing the circulation of Petitions on or about March 15, 2024, after having approved Plaintiff's Petition for circulation on January 9, 2024, and after Plaintiff had completed the collection of the required number of signatures on the Petition to secure ballot access for Nevada's 2024 general election ballot. Defendant is a

resident of the state of Nevada and maintains offices within this state. Defendant is a state actor within the meaning of 42 U.S.C. §1983.

## V.  RELEVANT FACTS

9.      Plaintiff is charged with placing the name of Robert F. Kennedy Jr., on all fifty state ballots for the office of President of the United States for the general election scheduled to be held on November 5, 2024.

10.     To secure access to Nevada 2024 general election ballot, Plaintiff is required to complete the following statutory mandates:

(a)     Submit a fully populated form of a Petition to Defendant for approval before the Petition may be circulated to collect the required number of signatures;

(b)     Collect 10,095 valid signatures from registered voters and resident of Nevada;

(c)     File, no later than July 5, 2024, Plaintiff's Petitions with Nevada's County Clerks to verify Plaintiff's Petition signatures; and,

(d)     File, no later than August 9, 2024, with Defendant Plaintiff's verified Petitions; a Declaration of Candidacy for the presidential and vice-presidential candidate; a list of 6 presidential electors and alternate electors and a filing fee of $250.00.

11.    The Nevada statutes impose conflicting requirements with respect to whether a Petition for an independent presidential candidate may also include the name of a vice-presidential candidate.

12.    NRS § 293.200(5) expressly provides the Petition may not contain the name of more than one candidate for each office to be filled.

13.    The blank form of the Petition published by Defendant at page 13 & 14 of Defendant's "State of Nevada Presidential Candidate Guide 2024" provides only a single line for a single candidate. (i.e., the Petition provides: "For the Office of _____.") *See*, Exhibit A.

14.    Notably, the Petition does NOT provide "For the Offices of _____." There is no plural on the Petition published by Defendant to indicate the Petition may provide for candidates for more than 1 office – consistent with the mandate of NRS § 293.200(5) which prohibits the naming of more than 1 candidate on a Petition. *See*, Exhibit A.

15.    The first statutory reference to the naming of a vice-presidential candidate by an independent presidential candidate is under the provision governing the filing deadline to secure ballot access and is, itself, ambiguous as to which document or documents must name a vice-presidential candidate.

16.    NRS § 298.109 provides, in relevant part:

"1. A person who desires to be an independent candidate for the office of President of the United States must, not later than 5 p.m. on the

second Friday in August in each year in which a presidential election is to be held, pay a filing fee of $250 and file with the Secretary of State a declaration of candidacy and a petition of candidacy, in which the person must also designate a nominee for Vice President."

17.     The declaration of candidacy required to be filed at the same time as the Petition must be executed by both the presidential and vice-presidential candidate, satisfying the statutory requirement to "designate a nominee for Vice President."

18.     On the other hand, NRS § 298.109 could be interpreted as requiring both documents (the declaration of candidacy and the Petition) to designate a vice-presidential candidate.  Such interpretation, however, cannot be squared with NRS § 293.200(5) which prohibits the naming of more than 1 candidate on a Petition or the fact that the form of Petition published by Defendant does not provide for multiple candidates to be named on a Petition.

19.     Furthermore, Defendant's "State of Nevada Presidential Candidate Guide – 2024" at no time provides any "guide" to name a vice-presidential candidate on the Petition.

20.     Every communication with Defenant's staff on this issue repeatedly confirmed that a vice-presidential candidate could not be named on the Petition.

21.     While bad advice from Defendant's staff is not dispositive, the statutory requirement to file the Petition and approval received by Defendant to circulate the Petition without the name of a vice-presidential candidate has the

force of statutory law which cannot be reversed after approval to circulate has been expressly granted.

22.    On January 5, 2024, Plaintiff submitted a populated Petition for each county to Defendant for filing and approval which did not name a vice-presidential candidate.  *See*, Exhibit B.

23.    In response to Plaintiff's initial filing of the Petition, Defendant's staff responded on January 8, 2024:

"Good morning. Please submit Mr. Kennedy's petition without the County filled in.  You only need to file a copy of one page with us.

Mr. Kennedy and his team of signature gatherers will then need to use the same document (previously provided) and update the county specific to each area signatures are collected.  It's best if the signature gatherers do it as they collect signatures keeping the pages in order according to signature number sequence.  The signature gatherer will then get each packet notarized at the end (when completed) and attach that to the back of the packet.

Thank you,

Heather Hardy
HAVA Administrator
Office of Secretary of State Francisco V. Aguilar
101 North Carson Street, Suite 3
Carson City, NV 89701
(775) 684-7126
hardyh@sos.nv.gov"

*See*, Exhibit B.

24.    On January 9, 2024, Plaintiff complied with Defendant's instructions and submitted a Petition without the county field populated – but, against without the name of a vice-presidential candidate.  *See*, Exhibit B.

25.    In response, Defendant's staff responded: "Good Morning, Thank you for re-submitting Mr. Kennedy's petition.  It has been filed with the Secretary of State's Office.  **He may begin gathering signatures now**.  Please remember the final day to submit signatures to County Clerks is July 5, 2024.  Thank you." (emphasis added).  *See*, Exhibit B.

26.    Defendant's staff represented that the Petition filed with Defendant without the name of a vice-presidential candidate permitted Mr. Kennedy to "begin gathering signatures now."

27.    NRS § 293.200(1)(a) imposes the statutory requirement that the candidate must file a copy of the petition with the appropriate filing officer prior to circulating the document for signatures not earlier than January 2, 2024.

28.    The filing process of the Petition mandated by NRS § 293.200(1)(a) included Defendant's instruction that Mr. Kennedy "may begin gathering signatures now."  Accordingly, the statutorily required filing and re-filing process included an express approval of the Petition by Defendant.

29.     Approval of the Petition by Defendant without the name of a vice-presidential candidate resulted directly from an exercise of Defendant's statutory authority and was not simply bad advice which Defendant is permitted to ignore.

30.     As late as March 15, 2024, Defendant's staff also filed and approved a Petition by Cornell West, another independent candidate for the office of President of the United States, which also did not name a vice-presidential candidate. *See*, Exhibit C.

31.     Approval of Plaintiff's Petition as part of an exercise of Defendant's statutory authority to file a Petition before circulation may begin, prevents Defendant from imposing a new interpretation on the conflicting statutory provisions, detailed above, governing the circulation of Petitions for independent candidates for the office of President of the United States.

32.     Equitable estoppel prevents Defendant from reversing the approval and permission to collect signatures on the Petition filed with and approved by Defendant on January 9, 2024.

33.     Plaintiff relied on the approval granted by Defendant as part of the statutory requirement to file the Petition with Defendant prior to circulating the Petition.

34.     Plaintiff collected approximately 20,000 petition signatures between January 9, 2024, and the date Defendant communicated his change of position on the naming of vice-presidential candidates on the Petition.

35.     Defendant has publicly represented he advised all independent presidential candidates of his interpretation of the statutes as requiring the name of a vice-presidential candidate on Petition sometime on or about March 15, 2024.

36.     Plaintiff never received any such communication from Defendant.

37.     As noted above, Defendant filed a Petition for Cornell West without the name of a vice-presidential candidate as late as March 15, 2024.

38.     Defendant materially changed his position on the requirement to name a vice-presidential candidate on Petitions after Plaintiff had reasonably relied on Defendant's initial misrepresentation made as part of Defendant's exercise of a statutorily mandated process.

39.     Even IF, Defendant's current interpretation is correct that a vice-presidential candidate must be named on the Petition and IF equitable estoppel does not prevent Defendant from enforcing Defendant's new interpretation on Plaintiff in this election cycle, the requirement to name a vice-presidential candidate this early in the election cycle is, itself, unconstitutional under the First and Fourteenth Amendments to the United States and cannot be enforced in 2024.

40.     The requirement for independent presidential candidates to name their vice-presidential candidate earlier than the major political parties without a statutory provision to permit the use of a "placeholder" vice-presidential candidate and to later substitute out the name of a "placeholder" for the real vice-presidential candidate is a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *Anderson v. Firestone*, 499 F.Supp. 1027 (N.D. Fla. 1980).

41.     Since the decision in *Firestone*, no state seeking to require the naming of a vice-presidential candidate as a condition precedent to the lawful collection of signatures on ballot access petitions imposes the requirement without providing for a statutory substitution process of a "placeholder" vice-presidential candidate to protect rights afforded under the Equal Protection Clause.

42.     Nevada does not provide a statutory process to use a "placeholder" vice-presidential candidate followed by a substitution process for an independent candidate's real vice-presidential candidate.

43.     Parenthetically, the fact Nevada does not provide for a substitution process is further evidence that Defendant's new interpretation of Nevada's Petition requirements is at odds with proper statutory interpretation.

44.     The requirement to name a vice-presidential candidate so early in the election calendar just to permit collection of ballot access signatures on Petitions

exposes an independent presidential candidate to severe burdens not imposed on major political party presidential candidates and is, therefore, an unequal application of the laws in violation of the Equal Protection Clause of the Fourteenth Amendment.

45.    The selection of a vice-presidential candidate is the most important decision confronting any presidential candidate.

46.    Imposing a reduced amount of time to fully consider and vet potential vice-presidential candidates exposes an independent campaign to increased risk of a flawed decision triggering severe consequences from the voters.

47.    Major political party candidates are nominated solely on the strength of the presidential candidate's qualities.  Vice-presidential selection is not a subject of voter approval as part of the nomination process.

48.    As a result, there is no basis in law to graft conclusion of the vice-presidential selection process onto the ballot access process for independent presidential candidates when the major political party presidential candidates are not selected or nominated by the voters based on vice-presidential considerations.

49.    States are required to print the names of independent and third-party presidential candidates on their general election ballot if they demonstrate a modicum of support for the presidential candidate within the state.

50.     The United States Supreme Court has never limited the right guaranteed under the First and Fourteenth Amendments of independent and third-party presidential candidates to show support for both the presidential and also the vice-presidential candidate to secure general election ballot access.

51.     Requiring voters to approve of both the presidential and vice-presidential candidate to appear on the general election ballot adds additional levels of complication, both in terms of the considerations which must go into the selection of a vice-presidential candidate, but also the process of securing the signatures of voters on the Petition.

52.     To secure a voter's signature on a ballot access petition, the voter, who may support the presidential candidate, but may decline to sign plaintiff's Petition because of lack of knowledge of the vice-presidential candidate, or opposition to the vice-presidential candidate.

53.     Voters have a right and opportunity to pass on the entire presidential/vice-presidential ticket at the general election.

54.     Voter support for the nomination and ballot access process is limited the presidential candidate only.

55.     Defendant's enforcement of his interpretation of Nevada's statute to also require the naming of a vice-presidential candidate on the Petition is sole designed to make it more difficult and add additional complexity to the ability of

14

plaintiff to demonstrate the required level of support within Nevada for Mr. Kennedy to require Nevada to provide ballot access to Mr. Kennedy for the 2024 general election.

56.     Case law interpreting the First and Fourteenth Amendments to the United States Constitution do not permit states to impose both the requirement to collect petition signatures and to pay a filing fee to secure ballot access.

57.     Any filing fee, beyond a nominal amount, must provide for a bypass to paying the fee, which in almost every state is the collection of petition signatures to eliminate frivolous candidates from the general election ballot.

58.     The imposition of both requirements eliminates the ability to bypass the paying of a filing fee.

59.     Accordingly, the $250.00 filing fee impairs rights guaranteed to Plaintiff under the First and Fourteenth Amendments to the United States Constitution.

60.     Plaintiff has no other remedy available at law.

## VI.  CAUSES OF ACTION

### COUNT I
(Claim for Equitable Estoppel in Support of Injunction)

61.     Plaintiff reasserts each preceding allegation as if set forth fully herein.

62.     Nevada statutes prohibit the naming of more than one candidate on a Petition.

63.     The form of Petition published by Defendant provides for the naming of only 1 candidate on a Petition.

64.     Pursuant to statutory requirement, Plaintiff filed a Petition with Defendant which does not name a vice-presidential candidate.

65.     After Plaintiff's Petition was re-filed with Defendant on January 8, 2024, with edits requested by Defendant, Defendant represented to Plaintiff on January 9, 2024, that Plaintiff "may begin gathering signatures now."

66.     Plaintiff reasonably relied on Defendant's representation that Defendant's approval of Plaintiff's Petition could be circulated without the name of a vice-presidential candidate named on the Petition – a representation consistent with the statutory prohibition against naming more than one candidate on a Petition.

67.     On or about March 15, 2024, Defendant announced that vice-presidential candidate must be named on a Petition for independent presidential candidates.

68.     Defendant's change of position on the requirement to name a vice-presidential candidate on a Petition renders Defendant's initial approval of Plaintiff's petition a misrepresentation.

69.     Defendant's misrepresentation/change of position was announced after Plaintiff had paid for the collection of approximately 20,000 signatures on the Petition originally filed and approved by Defendant.

70.     Defendant's misrepresentation/change of position is detrimental to Plaintiff, both in terms of the cost of collecting new signatures and the threat of a denial of ballot access in Nevada.

71.     Accordingly, under principles of equitable estoppel Defendant must be preliminarily and permanently enjoined from enforcing Defendant's new interpretation of the ambiguous and conflicting statutory provisions governing the circulation of Petitions in Nevada with respect to the naming of a vice-presidential candidate on Petitions.

## COUNT II
(Violation of First & Fourteenth Amendment)

72.     Plaintiff reasserts each preceding allegation as if set forth fully herein.

73.     The United States Supreme Court has established states are required to print the name of independent and third-party presidential candidates on the general election ballot upon a showing of a modicum of support within the state for the presidential candidate.

74.     States may not add the additional requirement for independent presidential candidates to demonstrate the requisite support within the state for

17

both the presidential and vice-presidential candidate to secure ballot access under the First Amendment to the United States Constitution.

75.     Defendant's enforcement of the requirement for independent and third-party presidential candidates to name a vice-presidential candidate on the Petition to collect signatures to demonstrate the constitutional threshold to secure ballot access does not advance any legitimate state interest.

76.     Accordingly, Defendant's enforcement of the requirement to name a vice-presidential candidate as a condition precedent to collect ballot access signatures on the Petition to demonstrate the requisite support sufficient to require ballot access in Nevada impairs rights guaranteed under the First and Fourteenth Amendments to the United States Constitution for which plaintiff respectfully requests relief.

## COUNT III
(Violation of Equal Protection Clause of the Fourteenth Amendment)

77.     Plaintiff reasserts each preceding allegation as if set forth fully herein.

78.     To the extent Nevada statutes require independent presidential candidates to name a vice-presidential candidate on a Petition several months before major political party presidential candidates are required to name their vice-presidential candidates, the failure of Nevada to provide a statutory "placeholder" and substitution process for independent vice-presidential candidates is an unequal application of the law.

18

79.    Nevada does not provide a statutory right for independent presidential candidates to name a "placeholder" vice-presidential candidate on a Petition which can be substituted for the real vice-presidential candidate at the same time major political party presidential candidates are required to name their vice-presidential candidates.

80.    Accordingly, to the extent Nevada requires independent presidential candidates to name their vice-presidential candidates on their Petition, in the absence of a statutory "placeholder" and substitution process, the requirement offends the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution for which plaintiff respectfully requests relief.

### COUNT IV
(Violation of First & Fourteenth Amendments)

81.    Plaintiff reasserts each preceding allegation as if set forth fully herein.

82.    Nevada's requirement that independent presidential candidates both collect ballot access signatures and pay a filing fee violates precedent establishing the First and Fourteenth Amendments to the United States Constitution mandates that the States provide an opt-out of paying anything other than a *de minimus* filing fee.

83.    A $250.00 filing fee exceeds the definition of a *de minimus* filing fee.

84.     Accordingly, the mandatory $250.00 filing fee impairs rights guaranteed to Plaintiff under the First and Fourteenth Amendments to the United States Constitution for which plaintiff respectfully requests relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

(A)     Enjoin, under the principal of equitable estoppel as applied to Plaintiff, Defendant from enforcing a requirement for Plaintiff to name a vice-presidential candidate on the Petition;

(B)     Enjoin the invalidation of any Petition signature for the sole reason that Plaintiff did not name a vice-presidential candidate on the Petition;

(C)     Enter emergency preliminary injunctive relief against Defendant's requirement that Petitions for independent and third-party presidential candidates must also name a vice-presidential candidate;

(D)     Enter emergency preliminary injunctive relief enjoining Defendant from enforcing the $250.00 filing fee imposed under NRS § 198.109(1);

(E)     Enter permanent injunctive relief enjoining Defendant from enforcing any requirement under NRS § 298.109(1) to name a vice-presidential candidate on a Petition;

(F)     Enter permanent injunctive relief enjoining Defendant from enforcing the $250.00 filing fee imposed under NRS § 198.109(1);

(G)   Declare unconstitutional the requirement to name a vice-presidential candidate under NRS § 298.109(1) on a Petition;

(H)   Award such other and further relief as the Court deems necessary or proper; and,

(I)   Award Plaintiff's reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

Respectfully submitted,

Dated:  May 31, 2024

__/s/ Benjamin Nadig_____
Benjamin Nadig
NV Bar I.D. #9876
Law Office of Benjamin Nadig
*Counsel for Plaintiff*
228 South 4th Street, 3rd Floor
Las Vegas, NV  89101
(702) 545-7592
ben@lasvegasdefenselawfirm.

__/s/ Paul A. Rossi_____
Paul A. Rossi, Esq.
PA I.D. # 84947
IMPG Advocates
*Pro Hac Vice* Admission/Application
*Counsel for Plaintiff*
316 Hill Street
Suite 1020
Mountville, PA  17554
717.961.8978
Paul-Rossi@comcast.net