David R. Fox (NV Bar No. 16536)
Richard A. Medina (*pro hac vice* forthcoming)
Marisa A. O'Gara (*pro hac vice* forthcoming)
**Elias Law Group LLP**
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
(202) 968-4490
dfox@elias.law
rmedina@elias.law
mogara@elias.law

Scott F. Gilles (NV Bar No. 9035)
Matthew M. Griffin (NV Bar No. 8097)
**Griffin & Gilles PLLC**
401 S. Curry Street
Carson City, NV 89703
(775) 882-4002
scott@g3nv.com
matt@g3nv.com

*Attorneys for Proposed Intervenor-Defendant Somos PAC*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| TEAM KENNEDY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>FRANCISCO V. AGUILAR, in his official capacity as the Nevada Secretary of State,<br><br>　　　　　Defendant. | Case No. 2:24-cv-01027-JCM-MDC<br><br>**MOTION TO INTERVENE AS DEFENDANT** |

## INTRODUCTION

Nevada law is clear—anyone wishing to run as an independent candidate for the office of the President of the United States must "designate a nominee for Vice President . . . before the petition may be circulated for signatures." NRS 298.109(1). Plaintiff Team Kennedy ("Plaintiff") has failed to comply with that legal requirement and Robert F. Kennedy, Jr., ("Kennedy") is therefore ineligible to appear on the ballot unless and until he re-submits a petition that complies with Nevada law. Rather than curing this defect, Plaintiff has now come to this Court *two months*

after being notified that it failed to comply with the plain text of NRS 298.109(1) seeking extraordinary emergency relief and an end run around clear state law requirements.

Somos PAC ("Somos") seeks to intervene in this case in defense of its own direct, significant, and legally protectable interests. It is entitled to do so as of right under Federal Rule of Civil Procedure 24(a) because this suit threatens Somos's interests, the named Defendant, the Secretary of State, does not represent them, and Somos's motion is unquestionably timely. The relief Plaintiff seeks—a permission slip to bypass the legal requirements that all independent candidates for President in Nevada must comply with—will force Somos to completely rework both its voter engagement and paid media programs, thereby requiring it to divert critical and limited resources that were already earmarked for other states. Being forced to pull resources away from other key states and divert them into Nevada so close to the General Election will compromise Somos's ability to fulfill its mission of empowering Latinos to participate in the democratic process. Given the unique stakes for Somos and the Nevada voters it represents, Somos cannot reasonably rely upon the Secretary to adequately represent its interests in this litigation.

Because Somos satisfies the requirements to intervene as of right and on a permissive basis, Somos's motion to intervene should be granted.

## BACKGROUND

### I. Nevada's Ballot Access Laws

To appear on the general election ballot, Nevada statutes expressly require an independent candidate for president to "pay a filing fee of $250 and file with the Secretary of State a declaration of candidacy and a petition of candidacy, *in which the person must also designate a nominee for Vice President*." NRS 298.109(1) (emphasis added). The filing fee, completed declaration, and verified petition must be filed by 5 p.m. on the second Friday in August—this year, on August 9, 2024. *Id*. The candidate's verified petition must be signed by a number of registered voters equal to at least 1 percent of the total number of votes cast at the last preceding general election for Representative in Congress. *Id*. Because 1,009,503 votes were cast in the 2022 Congressional election, 10,095 signatures are required for placement on the 2024 general election ballot as an

independent candidate for president. *See* Off. of Nev. Sec'y of State, *State of Nevada Presidential Candidate Guide 2024* at 7 ("2024 Guide").[1]

This process occurs in multiple steps. First, "[t]he candidate shall file a copy of the petition the person intends to circulate for signatures with the Secretary of State before the petition may be circulated for signatures." NRS 298.109(1); *see also* NRS 293.200(1)(a); 2024 Guide at 4. The 2024 Guide specifies, in bolded language, that "**THE SECRETARY OF STATE DOES NOT APPROVE THE LEGALITY OF THE PETITION LANGUAGE OR THE PETITION FORM**." 2024 Guide at 5. The candidate may then begin circulating the petition for signatures. After gathering signatures the candidate must, no later than July 5, submit the petition to the county clerks or registrars for the county or counties in which it was circulated for signature verification. *Id*. at 4, 6; NRS 298.109(2).[2] Upon completion of this process, the county clerks or registrars will file with the Secretary of State a Certificate of Results of the signature verification. 2024 Guide at 6; NRS 293.1277(8). The candidate may then file the petition and declaration of candidacy with the Secretary of State. NRS 298.109(1).

## II.    Plaintiff's Complaint

Plaintiff alleges that on January 5, 2024, it submitted to the Secretary of State a copy of the petition it intended to circulate on behalf of Kennedy for placement on the general election ballot as an independent candidate for president. Compl. ¶ 32. The petition did not contain the name of a vice-presidential candidate. *Id.* On January 8, a member of the Secretary's staff responded directing Plaintiff to "submit Mr. Kennedy's petition without the County filled in" because Plaintiff "only need[s] to file a copy of one page with [the Secretary]." *Id.* ¶ 23. Plaintiff did so on January 9, *id.* ¶ 24, and the Secretary's office accepted the petition copy for filing, *id.* ¶ 25.

Plaintiff alleges that the Secretary of State has publicly represented that he informed

---

[1] Available at https://www.nvsos.gov/sos/home/showpublisheddocument/12293/ 638355490400900000 (last visited June 5, 2024). The 2024 Guide is incorporated by reference in the Complaint. Compl. ¶ 13, ECF No. 1; *see also Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

[2] Signatures must be submitted for verification within 25 working days of the last day to file the verified petition with the Secretary of State. NRS 198.109(2). This year, that day falls on July 5.

1  independent presidential candidates on or about March 15, 2024, of the need to name a vice-presidential candidate on their petitions, but that Plaintiff never received such a communication. *Id.* ¶¶ 35–36. Plaintiff does not allege when, exactly, it learned of the requirement, but Plaintiff represents that it collected approximately 20,000 petition signatures before learning of it. *Id.* ¶ 34.

On May 31, 2024, Plaintiff filed suit against the Secretary of State, seeking an injunction requiring the Secretary to accept Kennedy's petition of candidacy notwithstanding the failure to name a vice-presidential candidate on the petition. *Id.* at 20. Plaintiff alleges that the requirement in NRS 298.109(1) to name a vice-presidential running mate prior to gathering signatures conflicts with NRS 293.200(5)'s prohibition on "nam[ing] . . . more than one candidate for *each office* to be filled." NRS 293.200(5) (emphasis added); Compl. ¶¶ 11–12. Based on this purported conflict, and on the representation of the Secretary's staff that his petition "has been filed with the Secretary of State's Office" and Plaintiff "may begin gathering signatures now," Plaintiff argues that "equitable estoppel" prevents the Secretary from refusing to accept petitions that do not name a vice-presidential candidate. Compl. ¶¶ 25, 32, 71. Plaintiff also asserts constitutional challenges to NRS 298.109(1)'s requirement that independent candidates name a vice-presidential candidate on the petition violates the First and Fourteenth Amendments and the Equal Protection Clause. Compl. ¶¶ 72–80. Plaintiff further alleges that the $250 required filing fee violates the First and Fourteenth Amendments. *Id.* ¶¶ 81–84.

### III.    Proposed Intervenor-Defendant

Proposed Intervenor-Defendant Somos PAC ("Somos") is a Latino-led political action committee dedicated to empowering the next generation of Latino voters and increasing the participation of Latinos in our democracy. Ex. 1, Declaration of Melissa Morales ¶¶ 2–3 ("Morales Decl."). Somos has pledged to raise $33 million to support President Joe Biden and other Democrats through independent expenditures in 2024. *Id.* ¶ 7. To achieve its mission, Somos runs a large-scale voter engagement program and a bilingual paid media program across eight states, including Nevada. *Id.* ¶¶ 4–6. Somos expects that at least half of the PAC's total spending this year will be in only two states—Nevada and Arizona—to support President Biden and other Democrats.

Elias Law Group LLP
Attorneys at Law
Washington, DC

*Id.* ¶ 7.

Somos will kick off a field program to engage with voters directly in July 2024. *Id.* ¶ 4. Paid staff and volunteers will speak directly with Latino voters at their doors and at community events to encourage them to vote and to mobilize them to support Democratic candidates. *Id.* ¶¶ 4–5, 7. Staff and volunteers will be educated on how to best communicate with voters to draw a contrast between the two major party candidates for President—Joe Biden and Donald Trump— as well as to encourage Latino voters to get out to vote. *Id.* ¶ 5. Somos plans to knock on over 1 million doors of Latino households in Nevada leading up to the 2024 General Election. *Id.* ¶ 4. Somos estimates, based on past experience, that its total expenses in connection with this program will be around $5 million. *Id.*

Somos also plans to place paid advertisements in support of its mission in media including television and radio. *Id.* ¶ 6. Somos plans to spend nearly $5 million in Nevada between now and November on paid advertisements, the majority of which will include messaging supporting President Biden, opposing Donald Trump, and drawing a contrast between the two candidates. *Id.*

Allowing Kennedy to be placed on the 2024 presidential ballot despite his failure to comply with clear Nevada law will frustrate Somos's mission by requiring it to divert resources from its existing planned outreach to draw a contrast with yet another candidate. With Kennedy in the race, Somos will need to divert additional resources to educate voters about his policies and positions. For example, staff and volunteers will have to spend more time on each "knock" so they can make the case to Nevada voters that President Biden will be a better advocate for the Latino community than both Donald Trump *and* Robert F. Kennedy, Jr. *Id.* ¶¶ 10, 12. This will necessarily extend the length of conversations, thereby reducing the overall number of voters reached and increasing Somos's cost per knock. To reach its voter persuasion targets, Somos would therefore need to divert time and resources from its get-out-the-vote work, or else reduce the number of voters targeted for persuasion. *Id.* ¶ 12. Running ads opposing Kennedy will also reduce the pool of funds available for ads supporting President Biden or opposing Donald Trump. *Id.* Because Somos's fundraising capacity is finite, Somos will need to pull funding from its planned work in other states

to fund these changes to its field and paid media programs in Nevada. *Id.* ¶ 13. Scaling down operations in other states will harm Somos's mission by curbing its ability mobilize Latinos to participate in the democratic process. *Id.* ¶ 14.

Finally, Somos is concerned that increasing the number of candidates for president will lead to voter confusion and reduce overall Latino turnout, thereby harming Somos's mission of improving Latino voter participation. Data shows that additional candidates muddy the waters of the electoral environment, thereby increasing voter confusion and uncertainty and discouraging voters from showing up at the polls. *Id.* ¶ 10.

## STANDARD OF LAW

"Rule 24 traditionally receives liberal construction in favor of applicants for intervention." *Arkaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003); *see also W. Expl. LLC v. U.S. Dep't of Interior*, No. 3:15-cv-00491-MMD-VPC, 2016 WL 355122, at *2 (D. Nev. Jan. 28, 2016) (noting Rule 24's liberal construction and "focus[] on practical considerations rather than technical distinctions").

The Ninth Circuit "require[s] applicants for intervention as of right pursuant to Rule 24(a)(2) to meet a four-part test:"

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1148 (9th Cir. 2010) (quoting *California ex rel. Lockyer v. United States*, 450 F.3d 436, 440 (9th Cir. 2006)).

"Rule 24(b) permits the Court to allow anyone to intervene who submits a timely motion and 'has a claim or defense that shares with the main action a common question of law or fact.'" *Nevada v. United States*, No. 3:18-cv-569-MMD-CBC, 2019 WL 718825, at *2 (D. Nev. Jan. 14, 2019) (quoting Fed. R. Civ. P. 24(b)(1)(B)). In addition to a common question of law or fact, permissive intervention under Rule 24(b) also requires (1) a timely motion and (2) an independent

basis for the court's jurisdiction. *See Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998).

Finally, Rule 24(c) requires that a motion to intervene "be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c).[3]

## ARGUMENT

### I. Somos is entitled to intervene as a matter of right.

#### A. The motion is timely.

The motion is timely, filed mere days after Plaintiff initiated this suit and before the Defendant has appeared in the case or any substantive activity has occurred. "In determining whether a motion for intervention is timely, [courts in this Circuit] consider three factors: '(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay.'" *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) (quoting *County of Orange v. Air Calif.*, 799 F.2d 535, 537 (9th Cir.1986)). Each of these considerations supports a finding of timeliness here.

*First*, these proceedings are truly at their earliest stages. Plaintiff filed its complaint on May 31, 2024; this motion follows just six days later. Plaintiff has not yet filed proof of service; Defendant has not yet appeared or filed a responsive pleading; and no case schedule has been set. *See, e.g.*, *Nevada*, 2019 WL 718825, at *2 (granting motion to intervene filed several weeks after action commenced); *W. Expl.*, 2016 WL 355122, at *2 (granting motion to intervene filed nearly two months after action commenced).

*Second*, permitting Somos to participate poses no risk of prejudice or delay to the existing parties. Somos will agree to any schedule stipulated to by the principal parties and, of course, will abide by all deadlines and schedules set by the Court. *See, e.g.*, *Portfolio FB-Idaho, LLC v. Fed. Deposit Ins. Corp. as Receiver for First Bank of Idaho*, No. 1:10-CV-377-BLW, 2010 WL 5391442, at *4 (D. Idaho Dec. 17, 2010) (finding no risk of prejudice where "discovery has yet to

---

[3] In compliance with Rule 24(c), Somos attaches a Proposed Answer to this motion as Exhibit 2. Somos believes, however, that the Complaint should be dismissed under Federal Rule of Civil Procedure 12(b), and intends to file a Rule 12(b) motion by no later than the named Defendant's deadline to respond to the Complaint.

commence, no original deadlines have expired, and [intervenor] represents that it can quickly file a responsive brief"). Proposed Intervenors will therefore not be the cause of any delay in this case.

*Finally*, "the reason for and length of the delay" has no relevance here because there has been no delay whatsoever. *See, e.g.*, *W. States Trucking Ass'n v. Schoorl*, No. 2:18-CV-1989-MCE-KJN, 2018 WL 5920148, at *1 (E.D. Cal. Nov. 13, 2018) (finding there had "been no delay" where party "sought to intervene [at] the very outset of litigation").

Somos's motion thus satisfies the first requirement for intervention as of right: it is timely.

### B. This case threatens Somos's significant interests in avoiding diversion of mission-critical resources.

Somos also satisfies the second and third requirements for intervention because it has significant protectable interests in this lawsuit, and the action threatens to impair its ability to protect those interests. Under the liberal standard governing intervention, Somos need only show that its interests would be "substantially affected in a practical sense by the determination made in an action." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (quoting Fed. R. Civ. P. 24 advisory committee's note to 1966 amendment). It need not show that impairment is "an absolute certainty." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 900 (9th Cir. 2011). Rule 24(a)'s interest requirement is less stringent than Article III's standing requirements, and the threatened impairment of Somos's practical interests in the case also need not rise to the level of an injury-in-fact. *See Yniguez v. Arizona*, 939 F.2d 727, 735 (9th Cir. 1991). Generally, after determining the applicant has a protectable interest, courts have "little difficulty concluding" that the disposition of the case may affect such interest. *Lockyer*, 450 F.3d at 442 (citing *Berg*, 268 F.3d at 822).

Somos has a substantial interest in this litigation because the relief sought by Plaintiff would require Somos to divert time and resources away from other essential election-year activities, harming its mission in the process. This impairment to Somos's own organizational mission and resources satisfies even the higher bar of Article III standing. *See, e.g.*, *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 663 (9th Cir. 2021) ("[A]n organization has direct

ELIAS LAW GROUP LLP
ATTORNEYS AT LAW
WASHINGTON, DC

MOTION TO INTERVENE

standing to sue where it establishes that the defendant's behavior has frustrated its mission and caused it to divert resources in response to that frustration of purpose."). As detailed above, Somos draws on a finite pool of funds for its voter education, engagement, and turnout efforts. Allowing Kennedy to bypass Nevada law to be placed on the general election ballot will force Somos to divert some of its limited resources to educate Latino voters on Kennedy's background, policies, and positions. And every dollar or hour spent on those activities is one not spent on Somos's planned persuasion, contrast, and get-out-the-vote messaging.

Somos therefore seeks to intervene to avoid the disruption that Plaintiff's requested relief would cause to its voter engagement and paid media plans for the upcoming general election. *See County of San Miguel v. MacDonald*, 244 F.R.D. 36, 47 (D.D.C. 2007) (granting intervention where plaintiffs' requested relief would require "the expenditure of additional time and resources" by intervenors (internal citation omitted)); *cf. Democratic Nat'l Comm. v. Reagan*, 329 F. Supp. 3d 824, 841 (D. Ariz. 2018) (finding standing where law required organization "to retool [its] [get-out-the-vote] strategies and divert [] resources"), *rev'd on other grounds sub nom. Democratic Nat'l Comm. v. Hobbs*, 948 F.3d 989 (9th Cir. 2020) (en banc). These political expenditures are themselves a "legally protectable interest" warranting intervention. *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 306 (5th Cir. 2022) (holding political parties had a "legally protectable interest" sufficient to intervene in an action challenging restrictions on poll watchers because they "expend significant resources in the recruiting and training of volunteers and poll watchers who participate in the election process"). Courts regularly recognize a drain of campaign resources as a cognizable legal interest of political parties. *See, e.g.*, *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 586 (5th Cir. 2006) (holding the state party had legal interest in the case because the party "would need to raise and expend additional funds and resources to prepare a new and different campaign in a short time frame" if an opposing candidate was replaced on the ballot); *Lee v. Va. State Bd. of Elections*, 188 F. Supp. 3d 577, 584 (E.D. Va.) (finding the Democratic Party of Virginia "has shown sufficient injury primarily in the form of diversion of time, talent, and resources" in response to challenged practice), *aff'd*, 843 F.3d 592 (4th Cir. 2016). The same

is true of political action committees like Somos that make independent expenditures in support of candidates.

Somos's ability to protect its interests will be significantly impaired if it is not permitted to intervene. Because Somos "ha[s] a significant protectable interest," the court should have "little difficulty concluding that the disposition of the case may, as a practical matter, affect it." *Citizens for Balanced Use*, 647 F.3d at 898 (cleaned up). If Plaintiff succeeds, Somos will be required to retool its entire voter engagement program. And if that occurs, Somos "will have no alternative forum in which [it] might contest" that result. *Lockyer*, 450 F.3d at 443.

### C. Somos's interests are not adequately represented by the existing parties in this case.

Somos will not be assured adequate representation in this matter if it is denied intervention. "[T]he requirement of inadequacy of representation is satisfied if the applicant shows that representation of its interests '*may b*e' inadequate," and therefore "the burden of making this showing is minimal." *W. Expl.*, 2016 WL 355122, at *3 (emphasis added) (quoting *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983)); *see also Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). Courts are "liberal in finding" this requirement to be met because "there is good reason in most cases to suppose that the applicant is the best judge of the representation of the applicant's own interests." 7C Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 1909 (3d ed.). And the Ninth Circuit "stress[es] that intervention of right does not require an absolute certainty . . . that existing parties will not adequately represent [an intervenor's] interests." *Citizens for Balanced Use*, 647 F.3d at 900. Here, neither Plaintiff nor Defendant are assured to adequately represent Somos's interest. As to Plaintiff, little needs to be said: Plaintiff seeks to fundamentally reshape the electoral environment in Nevada by asking this Court to remedy Plaintiff's own failure to comply with Nevada law. Proposed Intervenors strongly oppose that result.

While the Secretary of State may also oppose that relief, it does not follow that he will represent Somos adequately. Courts have "often concluded that governmental entities do not

adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003); *accord Citizens for Balanced Use*, 647 F.3d 893, 899 (9th Cir. 2011) ("[T]he government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009))); *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1254 (10th Cir. 2001) (holding that a showing of inadequate representation "is easily made when the party upon which the intervenor must rely is the government, whose obligation is to represent not only the interest of the intervenor but the public interest generally, and who may not view that interest as coextensive with the intervenor's particular interest"). Courts within this District have often reached the same conclusion in election cases. *See, e.g.*, *Donald J. Trump for President, Inc. v. Cegavske*, No. 2:20-CV-1445-JCM-VCF, 2020 WL 5229116, at *1 (D. Nev. Aug. 21, 2020) (granting intervention as of right because Secretary of State did not adequately represent partisan organization's interests, despite both wishing to defend against suit); *Paher v. Cegavske*, No. 3:20-CV-00243-MMD-WGC, 2020 WL 2042365, at *3 (D. Nev. Apr. 28, 2020) (similar, even where proposed intervenors and named Defendant "presumably share[d] the goal of protecting the all-mail election provisions . . . being challenged"); *Fair Maps Nev. v. Cegavske*, No. 3:20-CV-00271-MMD-WGC, 2020 WL 8188427, at *3 (D. Nev. May 20, 2020) (similar).

The Supreme Court itself has recently emphasized that executive officials will not often be adequate representatives for partisan or private actors who seek to intervene under Rule 24. *See Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 196 (2022). In *Berger*, the Supreme Court reiterated its longstanding instruction that even when state agents pursue "related" interests to political actors, those interests are not properly considered "identical." *Id.* at 197 (quoting *Trbovich*, 404 U.S. at 538). The Court then explained that "[w]here 'the absentee's interest is similar to, but not identical with, that of one of the parties,' that normally is not enough to trigger a presumption of adequate representation." *Id.* (quoting 7C Wright & Miller, *Fed. Prac. & Proc. Civ.* § 1909). In particular, the Court stressed that whereas actors like the Secretary of State must

"bear in mind broader public-policy implications," *id.* at 196, Somos's sole interest rests in preserving its resources in support of its mission to mobilize Latino voters to ensure the election of Joe Biden and other Democrats. *See* Morales Decl. ¶ 7. Somos and the Secretary of State therefore do not "share the same ultimate objective." *Citizens for Balanced Use*, 647 F.3d at 898.

It is therefore immaterial that Somos would "fall on the same side of the dispute" as the Secretary—which is always the case with intervention. *Issa v. Newsom*, No. 2:20-CV-1044-MCE-CKD, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020). "While Defendant['s] arguments turn on [his] inherent authority as [a] state executive[] and [his] responsibility to properly administer election laws, the Proposed Intervenor[ is] concerned with . . . allocating [its] limited resources . . . ." *Id.* The Secretary of State is an "elected official who may feel allegiance to the voting public." *Berger*, 597 U.S. at 198. The Secretary must also consider "the expense of defending [Nevada's ballot access law] out of [state] coffers," when that money could go to some other enforcement priority. *Clark v. Putnam County*, 168 F.3d 458, 461–62 (11th Cir. 1999). "Courts, including the Ninth Circuit, 'have permitted intervention on the government's side in recognition that the intervenors' interests are narrower than that of the government and therefore may not be adequately represented.'" *GP Mgmt. Corp. v. City of Los Angeles*, 339 F.R.D. 621, 624 (C.D. Cal. 2021) (quoting *Arakaki*, 324 F.3d at 1087).

## II. Alternatively, the Court should grant Somos permissive intervention under Rule 24(b).

Somos also satisfies the requirements for permissive intervention under Rule 24(b), which grants this Court broad discretion "to allow anyone to intervene who submits a timely motion and 'has a claim or defense that shares with the main action a common question of law or fact.'" *Nevada*, 2019 WL 718825, at *2 (quoting Fed. R. Civ. P. 24(b)(1)(B)).[4] If these conditions are

---

[4] The Ninth Circuit has explained that "a district court has discretion to permit intervention when the movant presents (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013, 1022 (9th Cir. 2022) (cleaned up). However, an independent ground for jurisdiction "is unnecessary where, as here, in a federal question case the proposed intervener raises no new claims." *Nevada*, 2019 WL 718825, at *2 (citing *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011)).

met, the court may then consider other factors in making its discretionary decision, including:

> the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case. The court may also consider whether changes have occurred in the litigation so that intervention that was once denied should be reexamined, whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*Callahan*, 42 F.4th at 1022 (quotation omitted).

As discussed above, the motion to intervene is timely, Plaintiff's challenge to Nevada law threatens significant harm to Somos's legally protected interests, and Somos cannot rely on Defendant to adequately protect its interests. Somos raises arguments against Plaintiff's claims that are likely to share common questions of law and fact with the main action, including with respect to the discredited reading of Nevada law upon which Plaintiff bases its entire suit. *See generally* Ex. 2, Prop. Intervenor's Prop. Answer. And intervention will result in neither prejudice nor undue delay. As shown by its prompt effort to intervene, Somos has an interest in swift resolution of this action to ensure that it is able to effectively deploy its limited resources in support of its mission to improve Latino voter participation and engagement.[5]

Accordingly, Somos's participation in this this case "will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Callahan*, 42 F.4th at 1022 (quotation omitted)

## CONCLUSION

For the reasons stated above, Proposed Intervenor respectfully requests that the Court grant its motion to intervene as a matter of right under Rule 24(a)(2) or, in the alternative, permit it to intervene under Rule 24(b). A proposed pleading—Somos's Proposed Answer—is attached hereto as Exhibit 2.

---

[5] Moreover, Somos agrees to be bound by any case schedule set by the Court or agreed to by the principal parties.

Dated: June 6, 2024

Respectfully submitted,

**ELIAS LAW GROUP LLP**

By: */s/ David R. Fox*

    David R. Fox (NV Bar No. 16536)
    Richard A. Medina (*pro hac vice forthcoming*)
    Marisa A. O'Gara (*pro hac vice forthcoming*)
    **Elias Law Group LLP**
    250 Massachusetts Ave NW, Suite 400
    Washington, DC 20001
    (202) 968-4490
    dfox@elias.law
    rmedina@elias.law
    mogara@elias.law

    Scott F. Gilles (NV Bar No. 9035)
    Matthew M. Griffin (NV Bar No. 8097)
    **Griffin & Gilles PLLC**
    401 S. Curry Street
    Carson City, NV 89703
    (775) 882-4002
    scott@g3nv.com
    matt@g3nv.com

    *Attorneys for Proposed Intervenor-Defendant*

- 14 -

MOTION TO INTERVENE

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of June, 2024 a true and correct copy of the forgoing Motion to Intervene was served via the United States District Court's CM/ECF system on all parties or persons requiring notice.

By: */s/ David R. Fox*
David R. Fox